# CHITTENDEN COUNTY,

---

## GEORGE ALGER v. ANDREW CURRY.

*Sheriff's Sale. Demurrer. Grand List. Justice of the Peace. Taxes. Pleading. Selectmen. Statute. Town Meeting. Soldiers' Bounty.*

All that is necessary, in a warning for a town meeting to raise money, is, that it should set forth, in general terms, the purposes or objects for which the money is to be raised, with such reasonable certainty as will notify all interested of the subject matter of the proposed vote or action of the town, and the time and place of meeting.

It was not necessary, in a warning for a town meeting to raise money for the purpose of procuring soldiers to aid in suppressing the rebellion, that there should be an article, to see if the town would consider whether there is a rebellion, or that the town had a quota to fill, or to see if there is any necessity for the use of money, in order to make the vote valid for this purpose.

These words, " to ascertain whether the town would vote a tax on the grand list for the purpose of paying bounties to soldiers, and paying its indebtedness,," in a warning for a town meeting, were *held* sufficient on general demurrer, to justify the town in raising money to pay bounties to soldiers, and the indebtedness of the town, under the act of 1862, Gen. Stat. p. 118, § 1.

Towns may direct their collectors to pay all, or any taxes, when collected to the selectmen ; and this without any clause in the warning for the town meeting to that effect.

It not being alleged in the declaration, that the soldiers to whom money was to be paid, were in the regiments or companies of this state, it was *held* to be the legal presumption that they were in such regiments or companies.

It being alleged that the property was posted to be sold at F. W. Baldwin's barn, the declaration was *held*, in this respect, sufficient on general demurrer, it being presumed that such was a public place.

A justice of the peace, who is also one of the board of selectmen, may issue a warrant to collect a tax which, when collected, is to be paid to the board of selectmen to which he belongs.

Alger *v.* Curry.

Where property was distrained on the 21st of February, 1865, and advertised on the 25th of February, 1865, to be sold on 3d of March, 1865, it was *held* to be in compliance with the statute as to time.

THIS was an action of trespass. It was tried on demurrer to the defendant's plea, at the April Term, 1867, PIERPOINT, Ch. J., presiding, and the court overruled the demurrer, and adjudged the plea sufficient and rendered judgment, *pro forma*, for defendant,—To which decision the plaintiff duly excepted.

The second plea alleged among other things as follows :

" The defendant also, was, at that time, and for many years before, had been a resident of said town, and the annual meeting of the legal voters in town meeting in said town, duly warned, notified and holden in said town on the first Tuesday in March, 1864, was legally elected first constable and of ex-officio collector of taxes for, said town, and having accepted said office, was then and there duly sworn to the faithful discharge of the duties thereof, and continued to perform the duties of said office for the full period for which he was elected, to wit, until the annual town meeting in said town, holden on the first Tuesday in March, 1865. The President of the United States having on the 18th day of July, 1864, issued his proclamation calling for 500,000 men to aid in suppressing the rebellion, and restoring peace to the country, and it being probable that future calls of a similar character would be made, and it being the lawful duty of every town to furnish a certain quota of men under such calls, on the 25th day of July, 1864, Noble L. Partch, Edward Russell and Isaiah Dow, then being the lawful selectmen of said town of Hinesburgh, as such selectmen, warned a meeting of the legal voters in town meeting in said town, to be holden at the town house therein on the 6th day of August, 1864, at one o'clock in the afternoon for the purpose (among other things) of ascertaining whether the town would vote to pay bounties to soldiers, and whether it would vote a tax on its grand list for that purpose, and for the purpose of paying its indebtedness, notifications of which meeting in due form of law, were, by the said selectmen, on said 25th day of July, 1864, set up in three public places in said town, in which notifications the business to be done in said meeting was fully stated and set forth according to law. At the time appointed in said warning and notifications, to wit, on the 6th day of August, 1864, at one o'clock in the afternoon, the legal voters in town meeting in said town assembled, pursuant to said warning, at the place appointed for that purpose, and having duly organized, the meeting proceeded (among other things,) to pass and adopt the following resolutions :

' *Resolved*, By the town of Hinesburgh in town meeting assembled, that the selectmen be authorized and are hereby instructed to enlist

into the service of the United States, a sufficient number of men to fill the quota of the town, under the present call for five hundred thousand. And they are hereby further empowered, to enlist men into service from time to time, and pay them such bounties as they shall deem for the best interests of the town.

' *Resolved*, By the town of Hinesburgh in town meeting assembled, that the selectmen be instructed, and they are hereby directed, to pay any that may be drafted from this town, and mustered into the service of the United States, the sum of three hundred dollars, under the present call.' And said town did also, at said meeting, lawfully vote to raise a tax, for the purpose mentioned in said warning, on the grand list of said town, completed on the 15th day of May 1864, of two hundred cents on a dollar on said list, to be collected and paid to the selectmen of said town, on or before the 1st day of October, 1864. Afterwards, to wit, on the same 6th day of August, 1864, at said Hinesburgh, the tax so voted as aforesaid, was uniformly and proportionally assessed on the said grand list by the said Partch, Russell, and Dow, selectmen as aforesaid."

Then after setting forth the plaintiff's list, the making of a tax bill with a warrant annexed, the plea proceeded as follows :

" Which warrant was dated the day and year last aforesaid, was signed by the said Noble L. Partch, a justice of the peace for said Chittenden county, as such justice, and was directed to the said defendant as such constable as aforesaid, and commanded him to levy and collect of the several persons named in said tax bill, the sum of money annexed to the name of each person respectively, and pay the same to the said selectmen on or before the 1st day of October, 1864." * * *

" Afterwards, on the 21st day of February 1865, the said defendant being such constable and collector as aforesaid, and having in his hands for collection the aforesaid tax bill and warrant, and having repeatedly, between the 6th day of August, 1864, and said 21st day of February, 1865, informed the said plaintiff of the amount of his said tax, and requested him to pay it, and the plaintiff having as often declared to the defendant that he, the plaintiff, would not pay his said tax, and that the said defendant might collect it by distraint if he choose, and said plaintiff's said tax being wholly unpaid, the said defendant, distrained the said goods and chattles in the said declaration mentioned, for the purpose of paying and satisfying the said tax so assessed against the said plaintiff. And having kept the said goods and chattels four days as required by law, and the tax aforesaid remaining unpaid, the said defendant as such collector, on the 25th day of February, 1865, at said Hinesburgh, at a public place in said town of Hinesburgh posted said goods and chattels for sale at public auction on the 3d day of March, 1865, at one o'clock in the afternoon, at F. W. Baldwin's barn, in said town,

·and at the time and place appointed for said sale as aforesaid, the said tax so assessed against the said plaintiff still remaining wholly unpaid, and the plaintiff still refusing to pay the same, the said defendant as such collector proceeded to sell at public auction to the highest bidder, the seven heifers and one yoke of steers mentioned in plaintiff's declaration," &c.

*C. J. Alger,* for the plaintiff.

I.   The defendant's plea is bad.

1. It is not alleged, in said plea, that the town had any quota to fill.   2. Nor that it would have one thereafter.   3. Nor that there were any men in town liable to do military duty, or subject to draft.   4. Nor that there was a rebellion.   5. Nor that it was the duty of every town to furnish a quota of men.   1 Chitty's Pl. 539 ; Stephens' Pl. 386, (top paging.)

II.   The warning does not justify the action and vote of the town under it.

It is to be noticed, (1,) that this warning does not contain any notification that special powers were to be put into ▪the hands of the selectmen, nor any article authorizing them to enlist men, from time to time, in their discretion.   Gen. Stat., p. 1. 106, § 3 ; *Blush* v. *Colchester,* 39 Vt. 193.   2. That there is no article in the warning authorizing the vote, making the tax payable to the said selectmen. 3. That there is nothing in the warning about drafted men.   4. The provision for paying drafted men three hundred dollars, is in opposition to the act of Congress, granting bounties of three hundred dollars to volunteers, and refusing all bounty to drafted men.   This vote rendered that act of no effect, so far as that provision was designed to encourage volunteering.   5. If the tax is illegal in part, it is wholly illegal and void.   *Drew* v. *Davis,* 10 Vt. 506.

III.   But if the warning had justified the vote under it, still there was no law giving towns the right to vote taxes for such purposes. *Van Sicklen* v. *Burlington,* 27 Vt. 70 ; *Stetson* v. *Kempton,* 13 Mass. 272 ; *Parsons* v. *Goshen,* 11 Pick. 398.

IV.  ˙The warrant under which the collector attempts to justify, is illegal and void.   1. It requires the money collected thereon, to be paid to the selectmen, instead of being paid to the town treasurer, as

Alger *v.* Curry.

is required by law.    Gen. Stat., ch. 15, §§ 13, 83.    2. The warrant is signed by said Noble L. Partch, a justice of the peace, and commands the money raised thereon, to be paid into his own hands, in his other official capacity, as one of the selectmen.    Gen. Stat., p. 280, § 22 ; p. 529, § 6 ; 13 Mass. 340–1.

V.    But if the warrant itself were legal and valid, and the vote of the town pursuant to the warning, still the acts of the collector under it are not according to law, and hence the warrant furnishes no justification.

1.  It does not appear that the constable ever received said tax list and warrant, and indorsed his name thereon, and the date of receiving the same, as required by law.    Gen. Stat., p. 530, § 8.

2.  The property was posted to be sold at F. W. Baldwin's barn, a place not alleged to be a public place, and was there sold, and it is not believed courts will take judicial notice that said barn was a public place.

3.  The requisite time was not given, after distraining the property, before posting it for sale, and the time after posting, and before sale, was less than the law requires.

VI.    The law under which the tax was voted, was unconstitutional.    Const. U. S., Art 1, § 8 ;  2 Story on Const., p. 100 § 1178–9 ; p. 135, § 1241 ; p. 310, § 1401–4–7.

1.  Congress having full power to regulate raising and supporting armies, there is no residuum of power left in the states, and any act of the states in respect thereto is void.    2 Story on Const., p. 8, §§ 1067, 1071, 1072, (*c*,) 1401–4–7 ; 1 Kent's Com., 236 ; *McCulloch* v. *Maryland*, 4 Wheaton, 316.


*Hard & Shaw*, for the defendant.

I.    The demurrer is general to the defendant's plea of justification.

Upon such a demurrer, unless the plea positively discloses some illegality in the tax, or in the mode of its collection, both the tax, and its collection, will be presumed to be regular.

The mere omission in the plea to state all the steps necessary to render the tax and its collection legal, will not sustain the demurrer. The allegations of the plea must be actually inconsistent with such

29

legality, or the plea will be sustained. *Spear* v. *Tilson*, 24 Vt. 420 ; *Wheelock* v. *Archer*, 26 Vt. 380 ; *Andrews* v. *Chase*, 5 Vt 412 ; *Briggs* v. *Whipple*, 7 Vt. 18 ; *Reed* v. *Chandler*, 32 Vt. 286 ; *Clemons* v. *Lewis*, 36 Vt. 673 ; *Blodgett* v. *Holbrook*, 39 Vt. 336.

II. The tax was legal. The vote was valid, both under the law of 1862, (Gen. Stat. p. 118, § 1,) and under that of 1863, entitled " an act for the aid of drafted soldiers." Acts of 1863, p. 4.

It will be presumed, in the absence of any allegation to the contrary, that the " soldiers " to whom the bounty was to be paid, which was raised by such tax, were volunteers within the scope of the act of 1862, or drafted men within the act of 1863. *Clemons* v. *Lewis*, 36 Vt. 673. *Blodgett* v. *Holbrook*, 39 Vt. 336.

It is entirely unnecessary, under the act of 1862, that the town should, at the time of voting a tax to pay bounties, have had any particular quota to raise. If it were necessary, it is sufficiently alleged that the town of Hinesburgh had such a quota.

III. The assessment of the tax, and the issue of a tax bill and warrant to the defendant, and his official character are all sufficiently stated. *Downer* v. *Woodbury*, 19 Vt. 329 ; Gen. Stat., ch. 15, p. 109, § 27.

The requirement in the warrant that the tax, when collected, should be paid to the selectmen, does not invalidate the defendant's proceedings. *Clemons* v. *Lewis*, 36 Vt. 673.

IV. The omission to state, that the defendant indorsed upon the tax bill the date of its receipt by him, is immaterial. *Goodwin* v. *Perkins*, 39 Vt. 598.

The plaintiff's refusal to pay the tax, excused the defendant from appointing a day or place to attend and receive it. *Downer* v. *Woodbury*, 19 Vt. 329 ; *Wheelock* v. *Archer*, 26 Vt. 384.

The defendant kept the property distrained four days, before posting it ; and he posted it six days before selling it.

The day of seizure, and of posting, are to be included in counting the four and six days respectively. *Souhegan Factory* v. *McConihe*, 7 N. H. 309 ; *Allen* v. *Carty*, 19 Vt. 65 ; *Glassington* v. *Rawlins*, 3 East, 407 ; *In re Wellman*, 20 Vt. 661 ; *Presbury* v. *Williams*, 15 Mass. 193 ; *Griffith* v. *Bogert*, 18 Howard 158.

Alger *v.* Curry.

The plea states that the distress was posted in a public place, to be sold at F. W. Baldwin's barn, in Hinesburgh, and was there sold at the time appointed. The statute does not require the sale to be at a public place. If it does, there is no presumption that Baldwin's barn is not a public place, but the contrary. See cases cited under first head, particularly *Andrews* v. *Chase*, 5 Vt. 412; also, *Drake* v. *Mooney*, 31 Vt. 617; *Austin* v. *Soule*, 36 Vt. 645.

The opinion of the court was delivered by

WILSON, J. This cause came into this court on a general demurrer to the defendant's plea of justification. It is insisted by the plaintiff's counsel that the plea is bad, because it does not allege that the town had a quota to fill; nor that there were any men in Hinesburgh liable to military duty, or subject to draft; nor that there was a rebellion, nor that it was the duty of every town to furnish a quota. It is obvious that it was not necessary for the defendant to allege or set forth in his plea, all the circumstances and particulars which rendered it necessary in the judgment of the legal voters of Hinesburgh, to raise the tax in question. Section 95, of chapter 15 of the General Statutes, provides that any town, at a town meeting legally warned and held, may grant and vote such sums of money as they shall judge necessary for the maintenance and support of the poor; for laying out and repairing highways; for building and repairing bridges; for the prosecution and defence of their common rights and interests, and for all necessary and incidental charges within the town. The act of 1862 provides that towns may grant and vote such sums of money as they may judge best, to be paid to those who have volunteered, or may hereafter volunteer from said town, to serve in the volunteer or militia regiments or companies of this State in the service of the United States. The act of 1863 provides, among other things, that towns may grant and vote such sums of money as they may judge best, to be paid to drafted men, who enter the service of the United States. These several acts state in general terms the purposes or objects for which towns, in their discretion, are authorized to grant and vote money, Section 3, of chapter 15 of the General Statutes, provides that all town meet-

ings shall be warned by the selectmen, who shall in their notifica-
tions of such meeting, set forth the business to be done and the
subjects to be considered at the meeting.    The law does not require
that the business to be done, or the subjects to be considered, should be
set forth in the warning with greater particularity than is expressed
in the statute which authorizes the town to vote money for the pur-
pose named in the warning; all that is necessary in this respect is
that the warning of the meeting to raise the money, should set forth
in general terms the purposes or objects for which the money is to be
raised, with such reasonable certainty as will notify all interested of
the subject matter of the proposed vote or action of the town, and the
time and place of meeting.    We think this has always been regarded
as a sufficient setting forth in the warning of the business to be done
and the subjects to be considered, to justify the raising of money for
any purpose named in the warning and authorized by law.    It would
not, I think, be gravely insisted that it would be necessary for the
selectmen, in warning a meeting to see if the town would raise money
to repair roads, or for the support of the poor, to insert in the warn-
ing an article to see if the town would consider whether there was a
road that should be repaired, or a pauper who needed relief.    But
the selectmen and other inhabitants of the town might well under-
stand the consideration of the article which expressed the purpose
for which it was proposed to raise the money, namely, for repairing
roads, or for the support of the poor, would necessarily involve the
inquiry and allow them to consider the question whether there was
a road that should be repaired, or a poor person who needed relief,
as well as to consider the present necessity of granting the money.
The vote, raising the money, may be regarded as the finding, by the
town, of such a state of facts as in the judgment of its legal voters,
show, *prima facie*, at least, the present necessity of the tax.    In
applying these remarks to the present case, it is evident that, in
the warning of the meeting to raise money to pay bounties to soldiers,
an article to see if the town would consider whether " there was a
rebellion," would not be necessary to give the right to consider the
subject, and the consequent duty of the town, nor essential to the
validity of the tax.    Nor is it necessary to the validity of the

vote of a town, that it should state the particular facts which show the present necessity of the town for the use of the money. In *Blodgett* v. *Holbrook*, 39 Vt. 336, it was held that all that is necessary in respect to the manner in which the purpose of a town in raising money, shall be expressed in the vote, is, that the vote shall indicate in general terms the purpose or object for which the money is raised, and if that purpose or object is such as comes within the scope of the powers of the town, it is sufficient. The law declares the purposes for which towns, in their discretion, may grant and vote money, and in some of those cases, the statute authorizes each town to decide for itself, as to the present necessity of the town for the use of the money, and as to its duty in respect to granting the tax. It therefore seems plain that, under the warning and vote which indicate in general terms the purpose for which the money was to be raised, and by the vote is raised, the law will presume that the town found all those particular facts upon which its legal voters acted, and in the exercise of their judgment and discretion under the statute, decided as to the present necessity of the town for the use of the money, and as to such facts the collector should not be required to allege or prove them. To require the collector to go back of a legal warning and vote, and show that the town, in the exercise of its discretion, acted wisely in its judgment in respect to the present necessity of the town for the use of the money, would, I think, be inconsistent with the letter and spirit of the statutes which allow towns the exercise of discretion in respect to the necessity of granting money for the purposes named in those statutes. It is clear, we think, that the allegations of the plea, in respect to the warning and vote of the meeting, are sufficient when they contain, in general terms, all the statute requires should be indicated by such warning and vote. In the case of *Clemons* v. *Lewis*, 36 Vt. 673, it was decided that if a plea of justification by a collector under a rate-bill and warrant to collect a tax, voted by the town, sets forth the purpose for which the tax was voted in general terms merely, and that be one for which the town may raise money, it is not necessary that he should allege all the circumstances and particulars to show that, in the particular case, the exercise of the power was rightful; that will be presumed, unless the

contrary appear.  It was, therefore, not necessary for the defendant to allege in his plea, or to prove that " *there was a rebellion.*"  It is objected by the plaintiff, that the plea does not allege that the town of Hinesburgh had a quota to fill, but this objection should not prevail.  The presumption is, that the town had a quota, but if it were necessary that the plea contain any allegation as to the quota of said town, the allegation in the plea, *that it was the lawful duty* of every town to furnish a certain quota of men under the call, is sufficient on general demurrer.

2.  The next objection urged by the plaintiff is, that the warning does not justify the action and vote of the town under it.  It appears that so much of the warning as related to taxation was, " *to ascertain whether the town would vote a tax on the grand list, for the purpose of paying bounties to soldiers, and paying its indebtedness.*"  The town had power to raise money for those purposes, and we think they were sufficiently expressed in the warning.  The town, *at said meeting, voted to raise a tax, for the purposes mentioned in said warning, on the grand list of said town, of two hundred cents on the dollar.*  This vote, upon its face, expressly refers to the warning for the purposes for which the money was raised ; it expressly states that the money was raised for the purposes mentioned in the warning ; it sufficiently expresses that the money was raised for the purpose of paying bounties to soldiers, and paying the indebtedness of the town, and it does not appear that the money was raised for any other purpose.  The town, in the passage of the vote, did just what the law and the warning authorized it to do.

3.  It is objected that there is no article in the warning authorizing the vote making the tax payable to the selectmen, but this objection, we think, is not well founded.  It is true that town treasurers are the general depositaries of money belonging to the towns, and the usual course is for the collectors to pay over the taxes to them.  But there is no statute requiring taxes, when collected, to be paid by the collector to the treasurer, and good reasons might exist why the money might not properly be paid to him, the sufficiency of which would be for the town, or its officers, to determine.  In *Clemons* v. *Lewis,* 36 Vt. 673, it was held that a direction, in a warrant, to the

collector to pay over the tax, when collected, to the selectmen, instead of the treasurer, will not make it invalid. In that case it did not appear that the town, by vote, directed the tax to be paid to the selectmen ; but, in this case, the town, by express vote, directed the tax to be paid to them, and that vote relating merely to the person or persons with whom the collector should deposit the money, when collected. required no article in the warning to justify its passage. The warrant authorized the defendant to use compulsory measures to enforce collection of the tax, and it was not a matter of concern to the plaintiff, and could not affect the validity of the tax, whether the collector, when the tax was collected, paid it to the treasurer or selectmen.

4. It is claimed by the plaintiff that there was no law giving towns the right to vote taxes for the purposes named in the warning ; that the act of 1862, applies only to such volunteers as serve in the volunteer or militia regiments, or companies of this state, in the service of the United States, and to payment of deb's contracted for paying bounties to such volunteers ; that the act of 1863 applies only to drafted men ; that it does not appear that any men were drafted from Hinesburgh, and that it does not appear, by the defendant's plea, that the volunteers to whom this money was to be paid, belonged to such regiments or companies. This objection cannot avail the plaintiff. We have before observed that it sufficiently appear by the plea, that the town had power to vote money, for the purposes named in the warning and vote. It does not appear, by the plea, that the soldiers to whom the money was to be paid, were not in the regiments of this state. The legal presumption is, they were in such regiments. or companies. The question is not, whether the town raised money, and directed it paid over for an unlawful purpose. The purposes for which the money was voted were lawful, therefore the purpose for which the town may ultimately apply the money can not affect the validity of the tax, but is a matter between the town and its officers. 36 Vt. 673.

5. It is said by the plaintiff's counsel, that the warrant under which the defendant attempts to justify, is illegal and void, beceause it is signed by Noble L. Partch, a justice of the peace, and directs

the money, when collected, to be paid into his own hands, in his official capacity as one of the selectmen. The statute provides that the selectmen shall apply to a justice for a warrant to collect the tax; and any justice to whom such application shall be made, whether liable to such tax or not, is authorized and required to issue such warrant. The issuing of the warrant, by the justice, was a ministerial act merely; he had no personal or private interest in the tax, but his interest, so far as the tax was payable to him, was merely official. This being his relation, it constitutes no ground of objection to the warrant.

6. It is insisted by the plaintiff that the plea is bad, because the property was posted to be sold at F. W. Baldwin's barn—a place not alleged to be a public place, and was sold there. Whether Baldwin's barn was or was not, at that time, a public place, cannot be determined on demurrer. The presumption is, that it was a public place at the time the property was posted. In *Austin* v. *Soule*, 36 Vt. 645, the court held that the words, *public place*, as used in the statute requiring goods levied upon and sold on an execution, to be advertised and sold at some *public place*, mean a place where the advertisement would be likely to attract general attention, so that its contents might reasonably be expected to become a matter of public notoriety; that a barn, dwelling house, shed, or even a rock or tree, if answering this condition, may be a public place within the meaning of the statute. The same construction should be given to the words " public place " which occur in the statute relating to the posting of goods destrained for payment of taxes. It is the duty of the officer who has levied upon goods by virtue of an execution, or distrained goods for the payment of taxes, to select some public place at which he may advertise and sell the property, and in making such selection he is required to act fairly. The main object or purpose to be sought in sales of this character is to secure for the sale such degree of publicity as will be likely to insure good faith in the sale, and to protect the rights of all interested in the property against collusion or fraud. The statute should receive a liberal construction when no want of good faith is imputed to the officer. But in this case, we think the allegations of the plea show a substantial compliance with

Alger *v.* Curry.

the statute in respect to the place at which the property was adver-
tised and sold, and they are sufficient on general demurrer. The
language of the statute is, " the constable, after posting such .dis-
tress for sale, for the space of six days in some *public place* in the
town in which it was taken, shall sell the same at public auction to
the highest bidder." The plea alleges, among other things, that the
defendant, at said Hinesburgh, at a public place in said town of
Hinesburgh, posted said goods and chattels for sale at public auc-
tion, on the 3d day of March, 1865, at one o'clock in the afternoon,
at F. W. Baldwin's barn in said town; and at the time and place
appointed, the defendant proceeded to sell and did .sell at public
auction the property so advertised. The plea in substance alleges
that the property was posted at a public place in Hinesburgh, to be
sold at public auction. The allegations of the plea are perfectly
consistent with the idea that the property was posted at Baldwin's
barn and that his barn was a public place.

7. It is urged by the plaintiff that the requisite time was not given
after distraining the property, before posting it for sale, and that the
time after posting and before the sale, was less than the law requires.
We think the proceedings of the officer are open to no valid excep-
tion in respect to the time of keeping the property, nor in respect to
the time of posting and selling it. The property was seized on the
21st of February, it was advertised on the 25th of February, to be
sold on the 3d day of March, and sold on that day, making ten days
from the time of the seizure to the time of sale, and six days from
the time of posting to the day on which it was sold, which is the full
time required by law. The only remaining question relates to the
constitutionality of the law under which the tax was voted. We
have no occasion in this case to enter upon an examination of this
question, because the same question was before the court at the last
General Term, and the decision in that case will be announced in
due time. We are of opinion that the defendant's plea is sufficient.
The plaintiff may replead under the general rule as to costs.

The judgment of the county court is reversed, *pro forma*, and the
case is remanded.