WILLIAM H. SEYMOUR *v.* TOWN OF MARLBORO.

*Bounty. Town Meeting. Vote. Rescission. Special Promise.*

The defendant town, on the 6th day of December, 1863, voted to pay each volunteer who should enlist to fill its *quota* of sixteen men under the call of the President of October 17th, 1863, $300. bounty. The plaintiff being a soldier on the 16th day of December, 1863, re-enlisted in the field, and, having heard that said town was paying $300. bounty, caused himself to be credited to it. He then came home on a furlough, saw the selectmen of said town, and claimed the same bounty they were paying others. They agreed that if he could be applied on said *quota*, they would pay him $300. bounty. They saw the provost marshal, and were informed by him that the plaintiff could not be credited on said *quota*, and filled it with other men. *Held*, that the plaintiff was not entitled to recover by virtue of said vote.

A long period of military service, a portion of which was performed under a re-enlistment induced by the expectation of receiving a bounty, constitutes a good and sufficient consideration for an express promise.

Seymour *v.* Town of Marlboro.

The vote of a town to pay a soldier a bounty, he having enlisted to its credit with
the expectation of receiving one, and having served faithfully during his term of
enlistment, is equivalent to an express promise to pay him the amount specified
therein; and a rescission of such vote at a subsequent town meeting, does not
affect his right of recovery for such bounty.

THIS was an action of assumpsit—general and special counts—to
recover $300. bounty.   Plea, general issue and special plea.   Trial
by jury, September Term, 1867, BARRETT, J., presiding.

It was conceded that the President of the United States issued his
proclamation on the 17th day of October, 1863, calling for 300,000
men to serve as volunteers in the army of the United States.

It was also conceded that the governor of Vermont issued his order
No. 2, assigning the quotas of the several towns under said call, and
appointing the selectmen of the several towns in this state recruiting
officers.

It appeared that the quota of Marlboro under said call was sixteen.

At a town meeting of said town of Marlboro duly warned, and
held on the 6th day of December, 1863, the town voted to pay to
each volunteer who should enlist to fill the quota of said town, three
hundred dollars.   And at a meeting duly warned, and held on the 2d
day of January, 1864, said town voted to pay an additional sum to
encourage further enlistments of two hundred dollars.

And at a meeting duly warned, and held on the 7th day of March,
1865, said town voted to pay said plaintiff, George Blakesley, Chaun-
cey Carpenter and Patrick Bowler, then in the service of the United
States, $300 each, at the expiration of their time of service.

On the 12th of June, 1865, at a meeting duly warned, and held
for that purpose, said town voted to rescind said vote of the 7th of
March.

The plaintiff enlisted into the service of the United States in
August, 1861, and re-enlisted December 16th, 1863, and on both
occasions was credited to the said town of Marlboro, and he was a
resident of said town.

The plaintiff re-enlisted at Brandy Station, in Virginia.   He
received of the United States, as bounty, $402.   He had not then
heard that the defendant was paying bounties, but before he was

credited to that town, he had heard that they had voted to pay $300, and that other towns in the same vicinity of the defendant were paying bounties equal to or exceeding that sum, and he expected a bounty from the town if he was mustered in to their credit, and would not have been mustered to their credit but for such expectation. The plaintiff came home on a furlough the last of December, having caused himself to be set to the town of Marlboro just before his return. Arriving at Marlboro the first of January, he notified the selectmen that he had re-enlisted to apply upon their quota of the 300,000 men, and had been mustered to their credit, and claimed to have the same bounty they were then paying to others. The selectmen not having filled their quota, informed the plaintiff that if they could get him credited upon said quota they would pay him the $300, they were then authorized by the vote of the town to pay. And on the 4th day of January, they being required to fill their quota by the 5th of January, 1864, the selectmen went with the plaintiff to Brattleboro, and applied to General Pitcher, provost marshal, then stationed at said Brattleboro, the plaintiff being with them, to have the plaintiff applied on said quota of sixteen men, and were informed by him, that he could not tell whether he could be thus applied or not; that he had no orders concerning the matter, but that he would telegraph, at once, to Adjutant and Inspector General Washburn for information; that General Pitcher did telegraph, as he proposed to do, and received the same day a reply, informing him that the plaintiff was already in the service, and had had his pay for re-enlistment, and that he could not apply upon said quota; of this the plaintiff was fully informed, and the selectmen filled the quota with other men to whom they paid the bounties authorized by the town, and the plaintiff did not apply on said quota.

The plaintiff was counted to the credit of the defendant, as a three year's man, prior to the call of October 17th, 1863, and again as a three year's man subsequent to said call of October 17th, 1863, and served to the close of the war, and was honorably discharged June 1st, 1865.

From the facts thus stated and proved, the defendant requested the court to direct the jury to return a verdict for the defendant, but the

court held that the plaintiff was entitled to recover, and directed the jury to return a verdict for the sum of $300., and interest thereon from June 1st, 1865, for the plaintiff. To which decision the defendants excepted.

*George Howe* and *A. Stoddard*, for the defendant.

I. The plaintiff is not entitled to recover under either the vote of December 6th, 1863, or of the 7th of March, 1864.

He never made any contract with the town; was never applied upon any quota of men required to be raised, and the fact that he caused himself to be credited to the town of Marlboro, where he resided, is not sufficient of itself to entitle him to the bounty which, under the vote of December 6th, was expressly given to sixteen other men.

Whatever may have been his expectations, he was particularly notified that he could not apply on the quota of sixteen men under the call of October 17th, 1863.

II. The vote of the 7th of March, 1865, was without lawful authority.

Under the act of 1862, towns are only authorized to enter into *contracts* for special purposes, and cannot make *donations* for any purpose.

In *Crowell* v. *Hopkinton*, 45 N. H., p. 9, the principles which should govern in cases like this are fully stated.

The effect of the vote of the 7th March was to divest an owner of his property without his consent, and all corporate powers of this character, even if lawfully exercised, should be construed strictly. Kent's Com., vol. 2, 5th ed., p.p. 298, 299, and cases there cited.

III. But if the vote of March 7th was lawful, it was competent for the town to rescind it, and that was done on the 12th of June, 1865. *Stoddard* v. *Gilman*, 22 Vt. 568; *Pond* v. *Negus*, 3 Mass. 230.

*Chas. N. & G. W. Davenport*, for the plaintiff.

The plaintiff is entitled to recover under the vote of December 5th. By that vote the town made a general public offer to pay any person

who "should enlist and be mustered to fill their quota." The plaintiff accepted the offer, and thus became entitled to the sum offered. *Williams* v. *Carmodine*, 24 E. C. L. 127 ; *Symes* v. *Frazier*, 6 Mass. 344 ; *Freeman* v. *Boston*, 3 Met. 56 ; *Loring et al.* v. *Boston*, 7 Met. 409 ; *Gale* v. *Jamaica*, 39 Vt. 610.

The case at bar is almost identical in its facts with *Gale* v. *Jamaica.* The only respect in which it can be claimed to differ to the plaintiff's prejudice, is the fact that the plaintiff did not actually apply on the quota under the call of October 17th.

But that was not the plaintiff's fault. He had done everything in his power to apply. He had enlisted, and been mustered to apply on that quota, and had notified the selectmen thereof before the town had filled its quota. The selectmen, acting upon wrong information, filled the quota with other men who counted before the notice of the plaintiff's enlistment and muster reached the adjutant general's office.

The plaintiff having literally conformed to the vote, cannot be held responsible for the errors of the officers of the defendant town, or of General Pitcher.

The plaintiff's enlistment and muster enured to the benefit of the defendant town on the next call subsequent to that of October 17th, 1863. He then applied on the quota of the town as a three year's man, and served to the close of the war, and was honorably discharged June 1st, 1865.

One of the records referred to, shows that at a meeting duly warned and held March 7th, 1865, the defendant " voted to pay the following named persons a bounty of $300. at the expiration of their term of service, now being rendered in the United States army, to wit: Wm. H. Seymour, George Blakesley, Chauncey Carpenter and Patrick Bowler."

This vote is a clear, distinct and unequivocal promise to pay the plaintiff a bounty of $300. at the expiration of his term of service.

And this promise is supported by a good and sufficient consideration, which I concede is as necessary in the case of a corporation as a natural person. That the consideration is sufficient will appear by recurring to the facts. The case shows that the plaintiff's enlistment was at the defendant's request, and in full faith and reliance upon the

promise of $300. voted December 5th, 1863. He accepted the offer contained in that vote, and did everything in his power to apply on that quota. And as it was no fault of his that he did not apply, the detriment he received by being mustered to the defendant's credit, afforded ample consideration to support the express promise above set forth.

Again, the plaintiff's enlistment enured directly to the defendant's benefit. That benefit alone is sufficient to support an express promise. And it is no objection that the consideration is past and executed, if it arose at the defendant's request, or the defendant derived benefit therefrom. 1 Chitty Pl. 323 ; *Hayes* v. *Warren,* 2 Strange, 933 ; *Frear* v. *Hardenburgh,* 5 Johns. 272 ; *Comstock* v. *Smith,* 7 Johns. 87 ; *Barlow* v. *Smith et al.,* 4 Vt. 139 ; *Harding* v. *Cragie,* 8 Vt. 501 ; *Gloss* v. *Beach,* 5 Vt. 172 ; *Booth* v. *Fitzpatrick,* 36 Vt. 681.

All the authorities fully sustain the proposition that a benefit to the defendant, or a loss, inconvenience, detriment, or subjecting himself to a charge or duty, by a plaintiff, is a sufficient consideration for an express promise. And this proposition is too elementary to justify citing authorities.

But the defendants will insist that by their vote of June 12th, 1865, they rescinded their promise, and absolved themselves from their obligation to pay the plaintiff.

The attempt to thus absolve themselves from their promise amounts to nothing. Their action was too late. It was more than " a day after the fair." The promise attached to the plaintiff as soon as the meeting, which passed the vote, dissolved. He became entitled to the sum of $300. " upon the expiration of his term of service." And if it was ever competent for the town to reconsider, it was certainly too late when " everything had been done under the vote." See *Stoddard* v. *Gilman,* 22 Vt. 568.

The opinion of the court was delivered by

PROUT, J. The grounds of exception in this cause are, that the county court refused to direct a verdict for the defendant, but directed the jury to return a verdict for the plaintiff.

The plaintiff claims that the decision of the county court is correct, and that he is entitled to recover by virtue of the vote of the defendant town, of the 5th of December, A. D. 1863, by which it appears that the town voted to pay three hundred dollars to such volunteers as should enlist and be mustered into the United States service to fill the quota of the town, under the call of the President, of October, A. D. 1863. The quota of the town under that call was sixteen men. The plaintiff re-enlisted in the field about the time of the expiration of his first term of enlistment, and was credited to the defendant town. At the time he re-enlisted he had been informed that they had voted to pay bounties to those enlisting, who caused themselves to be thus credited, to the amount he claims to recover in this action. After his re-enlistment he came home, when on furlough, and notified the selectmen that he had re-enlisted to apply to the quota of the town, and claimed the amount of bounty they were paying others under the vote referred to. The selectmen, not having then filled the quota required of the town, informed the plaintiff that if they could get him credited or applied to that quota they would pay him three hundred dollars bounty, as they were authorized by the vote in question. This interview was had on the 4th day of January, as the case finds, and the town were required to furnish the men, the day after, on the 5th. For the purpose of ascertaining if the plaintiff could be applied to the quota the town were then required to fill, as the parties mutually desired, they immediately applied to the provost marshal, who, being unable to inform them, communicated with the adjutant general of the state for information. He informed the parties that the plaintiff could not be counted on that quota, for the reason disclosed by the exceptions. The plaintiff, on re-enlisting, having been credited to the town, it is not apparent to us why he could not have been thus counted or applied. He was not, and the town filled the quota with other men. Both the plaintiff and selectmen of the town, thus far, seem to have acted with reference to the vote of December 5th, 1863, which was adopted for the purpose of enabling the town to procure men to fill the quota required under the call of the President of October, 1863. The plaintiff, not having been applied to that quota, without fault on the part of the

agents of the town, we think he is not entitled to recover by virtue of that vote.

But there is another view of this case upon the facts. The plaintiff was an inhabitant of the defendant town. He enlisted into the service in August, 1861 ; re-enlisted about the time of the expiration of his first term of service, and caused himself to be credited to the town, knowing they were paying bounties for such enlistments and credits, and expecting they would pay him as they paid others for like service. He remained in the field in the performance of his duty until the close of the war, and until honorably discharged. This long period of military service, a portion of which was performed under a re-enlistment thus induced, was not only meritorious but beneficial to the town, and constitutes a good and sufficient consideration for an express promise to pay him. In view of the decisions of this court, relating to the general subject, it is quite too late to question, or for the court to doubt, the authority of the town to raise and appropriate money, either by assessment in the usual mode, or upon credit, pursuant to vote, for the purpose of enabling them to furnish their assigned quota of men for the army during the war. The legislature authorized it, not only to enable the towns of this state to discharge a corporate *duty* under the law, but to relieve the inhabitants in respect to drafts and military service. Any contract or agreement, therefore, express or implied, entered into for this purpose and to this end, is obligatory; and if the facts in this case show what is equivalent to an express promise to pay the plaintiff the amount he claims for his military service, the town can stand upon no different footing than an ordinary party with respect to an ordinary contract. The plaintiff having re-enlisted, and having caused himself credited to the defendant town, as already remarked, he was applicable to the quota of the town under the call of the President of the 19th of December, 1864. Under these circumstances, having faithfully served until discharged, the defendant town, in March, 1865, voted to, pay him the sum of three hundred dollars (the amount he seeks to recover) at the expiration of his term of service. This vote we regard as having the effect of an express promise as between ordinary parties. It is a promise made to the

plaintiff, expressed in the only way the town in its corporate capacity could express it, and was made in consideration of services that not only enured to, but were directly for the benefit and relief of the inhabitants of the town.

The fact that the promise (vote) was made upon a past considera-tion does not affect its validity upon the facts.  The consideration upon which it was made, moved from the plaintiff, was meritorious and beneficial.  *Booth* v, *Fitzpatrick*, 36 Vt. '681.  Giving then the vote the effect we do, immediately upon its adoption by the town, the legal rights of the parties as to the claim in controversy, and to which it refers, became fixed, and these rights, as to the plaintiff, upon the facts in this case, cannot be defeated by the subsequent vote rescinding it.  An ordinary party cannot recall an express promise to pay another, based upon sufficient consideration, and thus relieve himself of liability in consequence of it, and we do not see how, upon principle, a town can.

The judgment of the county court is affirmed,