ALONZO E. HICKOK v. TOWN OF SHELBURNE.

*Soldier's Bounty. Substitutes. Pleadings. Town Meeting. Warning. Clerk pro tem.*

A man liable to draft having furnished and paid a substitute, who was enlisted and mustered in to the credit of the town, upon the request and assurance of the recruiting agents of the town that they would do what was right about it, is entitled to recover of the town under the act of 1862, No. 38, in an action of general assumpsit in the common counts, as for money paid for the use and benefit of the town, the amount specified in a vote of the town passed subsequently to the enlistment of the substitute, "to pay each man liable to draft who has furnished a substitute," etc., "six hundred dollars."

Such vote was authorized under a warning "to see what action the town will take in regard to the expected draft soon to be made," and to "see whether the town will vote to pay bounties to volunteers, if so, what bounties"; and was properly passed at an adjourned meeting of the special meeting called for this purpose.

A certified copy of the proceedings of the meeting, as kept and reported by a clerk *pro tem.* to the town clerk, is admissible for the purpose of showing the vote of the meeting.

GENERAL ASSUMPSIT in the common counts, for work and labor, money had and received, money lent, money paid, etc. Plea, the general issue, and trial by jury, April term, 1867, Chittenden county, PIERPOINT, C. J., presiding.

The plaintiff offered in evidence certified copies of the records of said town, containing the warning and proceedings of a meeting held July 25, 1864, under said warning, and of what purported to be an adjourned meeting held August 8, 1864; also the records of a warning, and meeting held under that warning, August 22, 1864.

To the admission of these records the defendants objected, on the ground that they were immaterial; and, as to the paper purporting to be a record of said adjourned meeting, for the additional reason assigned, that said paper on its face was not such as to make it evidence, being only a record of what had been reported to the town clerk; and in connection with this objection, the defendants offered to prove by parol that said Robert J. White, styled clerk *pro tem.*, was not sworn as clerk. The court excluded this evidence offered by the defendants and, against objections and exceptions taken, admitted said papers in evidence. The plaintiff then offered in evidence a certified official copy of

General Order No. 12, dated August 3, 1864, showing the quota of said town; also a certificate of the assistant adjutant general of the state of Vermont, dated March 23, 1867; which papers were severally objected to by the defendants, but the court admitted the same in evidence, the defendants excepting thereto.

The plaintiff gave evidence tending to prove, that on the 5th day of August, 1864, he, being subject to draft, furnished a substitute for himself, and that such substitute was accepted by the provost marshal, and went to the credit of said town, upon its assigned quota, and that he paid such substitute the sum of nine hundred dollars, and that these facts were known to the selectmen of said town at the time, the selectmen being Frederick Fletcher, Lafayette Lyon and Rufus W. Nash. Upon the subject of an agreement of said selectmen, or said town, to pay him any sum for the furnishing of a substitute for himself, the plaintiff in his own behalf testified that he had made some efforts to procure a substitute, which had failed, and then proceeded as follows:

"Fletcher told me I ought to be interested to put in a substitute. I told him I was, and that I would give him $300 to put in a man for me. He said he had as much as he could do, and I had better look up my own man. I told him I had been willing to put in $300, but said that he knew that $300 would not get a man. Fletcher replied that everybody was crazy. I said to him if he would give me as much as he was giving three years' men, I thought, with what I was willing to put in, I could get him a three years' man. He said, 'Go and get your man and put him in, and we will do what is right about it.' It was then talked between us that they were paying $600 for one year's men. I went forward, and in two or three days put in my man. I handed Fletcher the papers I had got from the provost marshal's office for the man I had put in, and told him I wanted what belonged to me. Fletcher took the papers and looked at them. He asked what I wanted, or if I would take $300? I said I wanted what was right, and was not then disposed to take $300, and told him so. He then said, 'We have no money in the treasury, and we can not pay you now,' and said, 'You take your papers and keep them until we have the means and we will settle with you, that the papers were perfectly good, all right.' The time I presented these papers was at the town meeting of the 8th of August, just as the meeting adjourned. This was all the talk I had with Fletcher before the quota was full. I had a talk with Lyon the day the

vote was taken at the first meeting. I spoke of the business, and he said he thought every man who would put in a substitute should have the benefit of that vote. I had no other conversation with him at that time. I had another talk with Lyon after I had put in the substitute. I went to see him, and talked about his allowing me the benefit of the $600. He said it was all right that we should have the $300, but he thought the $600 was above what a man who had put in a substitute ought to have. I told him they paid $600 for one year's men, and I thought they ought to pay me $600 for a three years' man. He said he would do what he could to have it right. They never paid me anything, or offered me anything."

On cross-examination the plaintiff testified as follows:

"Fletcher did not agree to pay me $600 nor $300, but said he would do what was right."

Upon the foregoing, being all the evidence put in by the plaintiff, except that said Lyon testified in his behalf, but his testimony is not material to be stated, the defendants claimed that the plaintiff was not entitled to recover in this action. The court *pro forma* so ruled, and the jury, under the court's direction, returned a verdict for the defendants. To such decision of the court the plaintiff excepted.

The warning of the town meeting of July 25, 1864, contained articles, among others, as follows:

"2d. To see what action the town will take in regard to the expected draft soon to be made by the President of the United States.

"3d. To see whether the town will vote to pay bounties to volunteers; if so, what bounties.

"4th. In case the town shall vote to pay such, to raise and provide means for the same."

Town met agreeable to the above warning, and

"*Voted*, That the town of Shelburne pay to each volunteer, substitute or drafted man who is credited to the town of Shelburne, one hundred dollars for one year; two hundred dollars for two years, and three hundred dollars for three years.

"*Voted*, That the selectmen be authorized to raise money on the credit of the town to pay the bounties voted, and to draw orders on the treasurer for each man mustered into the service of the

United States, and credited to said Shelburne, to fill the quotas of said town under the call for 500000 men, according to said vote.

"On motion, voted to adjourn two weeks, same time of day and place.

"Attest,                        WM. HARMON, Town Clerk."

"Town met agreeable to adjournment.

"*Voted,* Robert J. White, clerk *pro tem.*

"*Voted,* That the town of Shelburne vote a tax on the grand list of said town, in addition to that already voted, sufficient to pay each man liable to draft who shall furnish a substitute or volunteer for three years, $600, until said quota is filled.

"*Voted,* to amend so as to include all who have volunteered or furnished substitutes on the 500000 call.

"*Voted,* To adjourn.

"A true record as sent to me of the adjourned meeting by Robert J. White, clerk *pro tem.*

"Attest,            WM. HARMON, Town Clerk."

"I certify that the above and foregoing is a true copy from the records of a town meeting held under the foregoing warning.

"Attest,                WM. HARMON, Town Clerk."

*L. B. Englesby* and *E. R. Hard,* for the plaintiff, maintained that the power of towns to raise and appropriate money under the act of 1862, No. 38, has been repeatedly recognized in cases reported in 39 Vt., 70, 429, 610, and 40 Vt., 171. The words of the act are so general that it makes no difference by whom the service was rendered or money expended, and was intended to meet precisely the class of cases of which the case at bar is one, where individuals, feeling the pressing necessity of men, of their private means contributed to pay what was necessary to procure them. The town meeting had a right to adjourn and then proceed to act under the original warning, and appoint a clerk *pro tem.* This is fully decided in the case of *Hutchinson* v. *Pratt et al.,* 11 Vt., 402; and cases cited. An article to raise money is not exhausted by a single vote; but further sums may be raised from time to time, at subsequent adjournments of the same meeting, till the objects are accomplished. 7 Greenleaf, 404.

*Daniel Roberts* and *Wales & Taft,* for the defendants.

The town had no such corporate interest in the money or the work and labor expended by the plaintiff as to be chargeable

therefor, unless by special agreement. The duty of service rested upon the individual citizen. The town, as a corporation, was not obliged to furnish troops, and had no corporate duty in this respect. The plaintiff's service, or money instead, could therefore raise no implied promise against the town, nor furnish a consideration for even an express promise, for they were expended to and for his own use, not the town's. His right is derived from special statutes and such special facts as these statutes provide for; else he has no right. A special contract should therefore be set up in the declaration, with such facts as would show the authority of the town and its officers under the statutes to make the contract set up, and performance on the part of the plaintiff should be alleged.

The plaintiff by his evidence puts his recovery upon a *quantum. meruit*, but it is impossible to estimate this.

Aside from all questions of pleading, the case is not made out for a recovery in any form. In order to a recovery in any form the plaintiff must establish two points:

1st. That the town had authority to contract with him to pay him money for the furnishing of a substitute for himself, as a person subject to the draft. *Abendroth* v. *Greenwich*, 29 Conn., 356; *Willard* v. *Borough of Killingworth*, 8 Conn., 247; *Drew* v. *Davis*, 10 Vt., 506.

2d. That the town did so contract. And this involves the question of the form of the undertaking.

No act was then (August 5, 1864), in force, which authorized towns to pay bounties to persons not drafted, who should furnish or had furnished substitutes.

The act of October 29, 1862, (No. 38), applied to volunteers only. If a substitute may be called a volunteer, the person for whom he is substituted can not be so denominated. The act of November 10, 1863, (No. 2,) applied only to the case of men actually "drafted," who had thereupon gone personally into service, or who had furnished an accepted substitute.

Therefore, at that date, this town lacked power to bind itself or inhabitants by any stipulation to pay the plaintiff toward supplying himself with a substitute. *Booth* v. *Woodbury*, 32 Conn.,

118; *Webster* v. *Harwinton*, 32 Conn., 131; *Stetson* v. *Kempton*, 13 Mass., 271; 8 Allen, 80; *Ib.*, 503.

No subsequent legislation aids the plaintiff.

The votes passed at the meeting of July 25, and the adjourned meeting of August 8, were not authorized under the warning.

*Quere*, whether a special town meeting can adjourn to a future day, and then proceed to act under the original warning? There is a special provision authorizing the adjournment of the annual meeting. (Gen. Sts., 109, § 25.) This implies want of such power in case of special meeting. *Schoff* v. *Bloomfield*, 8 Vt., 472. *Quere*, whether, the town having fully acted at the called meeting of July 25 upon the subjects named in the warning, its power under that warning was not exhausted? The vote at this adjourned meeting is not for completing or carrying out any vote passed at the first meeting, but is a vote of another tax " in addition to" the former and embraces two new subjects, viz.: men liable to draft who shall furnish substitutes, and all who have volunteered or furnished substitutes. Clearly this was not authorized by any article in the original warning.

The record of this adjourned meeting has no authority. The town clerk certifies it to be " a true record as sent to me, etc., by Robert J. White, clerk *pro tem.*," that is, it was so *reported*.

*Quere*, whether the meeting had authority to elect a clerk *pro tem.?* In the absence of the town clerk, his duties (of which the record of votes is chief) are to be performed by the assistant town clerk, a sworn officer. Gen. Sts., 109, § 31; *Ib.*, 111, § 42, § 43; Constitution, § 29. It did not appear that White was sworn as clerk. This should not be presumed against the offer of the de- fendants to prove the contrary.

Finally, aside from any question connected with the statutes or the records, or the authority of the selectmen to bind the town, the evidence does not tend to show that the plaintiff ever came to any agreement with them.

The opinion of the court was delivered by

PROUT, J. The result of this cause in this court depends mainly, independent of the question as to the sufficiency of the

declaration, upon the construction of the act of 1862, (No. 38). Were the controversy between the substitute furnished by the plaintiff and the town, the enlistment, credit and application upon its assigned quota, and vote of July 25, 1864, upon the authority of repeated decisions, would fix the liability of the town, and it could not be avoided. *Seymour* v. *Marlboro*, 40 Vt., 171 ; *Cox* v. *Mt. Tabor*, decided at the last term of this court in Windsor county. The present case is distinguishable from those only by the fact that the plaintiff was liable to draft and furnished a substitute, the agents of the town not only having a knowledge of, but requesting the plaintiff to procure one, assuring and promising him that they would do what was right about it. The plaintiff's substitute, as contemplated by him and the selectmen, was credited to the town and counted upon its quota, so that the town was in fact relieved in respect to the draft and military service to the same degree it would have been had the substitute enlisted strictly as a volunteer, as in legal effect he was. Now this was the very object the legislature had in view by the act in question : to enable towns to procure men by volunteering instead of submitting to a compulsory draft of the inhabitants, and authorized them to " grant and vote such sums of money as they might judge best" to enable them to procure and pay them. This was the policy of the legislature and the object of the town as indicated by its votes, and we think the case upon the facts is within the spirit and meaning of both. It has been repeatedly held that the obligation upon the town was perfect and complete, upon the call of the president for men and assignments of its quota under the law, to furnish them. That the plaintiff was liable to draft, and that by furnishing a substitute or representative volunteer, by which he wholly relieved himself of military service, is not decisive. Procuring the man did not inure wholly to his benefit. He was counted upon the assigned quota of the town, and this was a benefit to the other inhabitants subject to draft, whom, as a class, the object and effort was, to relieve by procuring others to perform the service the government might otherwise require of them. This state of affairs existing, the town voted to raise a sum sufficient " to pay each man liable to draft who should furnish a substitute or volun-

teer for three years, six hundred dollars," until its quota was filled, and this vote was amended at the same meeting of the town so as to include all who had volunteered or furnished substitutes. The consideration existing then, consisting of the enlistment and credit to the town of the substitute, in view of the request and assurance of the agents of the town to do what was right, although past, is sufficient to sustain the express promise contained in the votes referred to. *Seymour* v. *Marlboro, Cox* v. *Mt. Tabor, ubi supra.*

It is urged that the warning of the meeting is insufficient and does not authorize the votes relied upon. Article 2d of the warning is "to see what action the town will take in regard to the expected draft soon to be made," etc., and article 3d is to "see whether the town will vote to pay bounties to volunteers, if so, what bounties." This we think sufficiently indicates the business to be done, and that was done under the warning. All that is necessary, as held in *Alger* v. *Curry,* 40 Vt., 437, is that the warning should set forth in general terms the purposes or objects for which the money is to be raised, so "as to notify all interested in the subject matter of the proposed vote or action of the town." This is also substantially held in *Kittredge* v. *Walden,* 40 Vt., 211. It is also urged that the special meeting, which adopted the votes referred to, could not legally adjourn for the purpose of completing its business. We can conceive of no valid objection to doing so, and none is suggested. Circumstances might exist that would not only render it proper but necessary to do so in order to complete the business for which the meeting was called; as the importance, amount of business contemplated to be done, and the time required to accomplish it. As to the validity of the record of the proceedings of that meeting, we think the point made was virtually decided in *Hutchinson* v. *Pratt,* 11 Vt., 402, and that it was admissible for the purpose for which it was used.

The only remaining question is, can the plaintiff recover upon the common counts and as *for money paid* for the use and benefit of the town. Holding, as we do, that the town, in view of the general policy and object of the law, had an interest to relieve its citizens from draft and military service, and as being under an

obligation to furnish its quota which could not be escaped, it had a corporate interest and as a town, in whatever relieved it of the burden thus existing, and its liability in respect to any contract warranted by law and authorized by vote, or promise, sustained by a sufficient consideration in respect thereto, is the same it would be as to any other contract thus authorized where money had been paid by another at its request or for its use and benefit, and that is precisely this case. The plaintiff was directed by the agent of the town to get the man, to put him in, and was assured by him that the town would do what was right about it. This he did ; the town desired the benefit of applying him to its quota, and subsequently indicated its sense of what is right by voting to pay him six hundred dollars, three hundred less than he paid to procure him. If here was a sufficient consideration, as there was, an express promise to pay, as what transpired at the time and the vote show, the case falls within the principle alluded to, and the plaintiff is entitled to recover as for *money paid* for the use and benefit of the town. *Worcester* v. *Ballard*, 38 Vt., 60. A majority of the court entertaining these views, the judgment of the county court is reversed and cause remanded.