# ESSEX COUNTY,

---

ALBERT BLODGETT *v.* ARTHUR T. HOLBROOK.

*Soldiers' Bounties.   Towns.   Grand List.*

All that is necessary in respect to the manner in which the purpose of a town in raising money shall be expressed in the vote, is that the vote should indicate in general terms the purpose or object for which the money is raised, and if that purpose or object is such as comes within the scope of the powers of the town, it is sufficient.

The warning was, "to see if the town will raise money to pay the bounty *promised* to soldiers;" under that article the town "voted to raise fifty-five cents on the dollar of the grand list, to pay the bounty *offered* to soldiers." *Held*, that the vote was sufficiently particular and definite, and the object specified was within the powers of the town under the act of 1862. (G. S., p. 118, § 1.)

Nor can the objection to the vote prevail on the ground that the vote was to pay bounty *offered*, whereas the warning was to pay bounty *promised*.

The vote was valid to raise money to pay notes which the selectmen had given to soldies as bounty to induce them to enlist to the credit of the town upon its quota; and if they so enlisted they enlisted *from* that town within the meaning of the statute, whether they resided in that town or not.

The fact that the listers in certifying and signing the list made by them, on one of the years intermediate the years of general appraisal of real estate, used the form of oath required by the statute on the year of general appraisal, instead of that given for other years, does not vitiate the list.

Nor does the omission of the magistrate's certificate upon the list that the oath certified and signed by the listers was administered to them, invalidate the list, when, in fact, the oath was administered.

And without the magistrate's certificate, in the absence of proof, the presumption will be that the list was sworn to as stated in the listers' certificate.

Blodgett *v.* Holbrook.

It need not appear on the list that it was completed and lodged in the town clerk's office on or before the 15th day of May.

Should the listers on a year of general appraisal omit to make an appraisal, then the trustees of any succeeding year may make it. (G. S., p. 520, § 24.)

THIS was an action of trespass for a mare. The defendant pleaded the general issue, and gave notice that he would justify the taking as collector for the town of Lemington upon a tax against the plaintiff. Trial by jury at the September Term, 1865, POLAND, Ch. J., presiding. The defendant admitted the taking of the mare. The defendant produced his rate bill and warrant, mentioned in his notice, whereupon the plaintiff admitted that the defendant was collector and that all his proceedings in taking and selling said mare, were regular and conformable to law. The only questions made on the trial were in reference to the legality of the plaintiff's list in Lemington, on which said tax was assessed, and the legality of the tax itself. The defendant read in evidence a vote of the town of Lemington, at the annual March meeting, in 1863, whereby the town voted to raise a tax of fifty-five cents on the dollar to pay bounty offered to soldiers. The plaintiff then offered to prove that prior to the meeting and vote aforesaid, under a call for troops from this state by the general government, the quota of Lemington was four men ; that the town neglected to procure volunteers until after a draft took place and four men were drafted from the town of Lemington, and therefore the selectmen of Lemington procured four men to go as volunteers in lieu of the four drafted, and executed to each of said four volunteers in the name of the town a note for one hundred dollars as bounty and that the money raised by this vote was to pay the notes thus executed by the selectmen, to said volunteers for bounties. That two of the persons thus procured as volunteers, were residents of New Hampshire, and that one of the four was a resident of Lemington ; that these notes were given by the selectmen without any previous vote of the town authorizing it. This offer was objected to by the defendant and the court being of opinion that the facts offered to be proved had no tendency to show that the purpose for which the money was raised was illegal, rejected the evidence, and the plaintiff excepted. The plaintiff also claimed that the vote upon its face showed that the

money was raised for a purpose not authorized by law. The court ruled otherwise and held that said vote was apparently for a legal object of taxation. The plaintiff also excepted to this ruling. The defendant gave in evidence the grand list of Lemington for the year 1863, in which the plaintiff was assessed for one poll $2.00 and 210 acres of land $10.00. The plaintiff objects that the certificate signed by the listers was not in the form required by the statute ; also that it did not appear upon said list that the listers made oath before a justice of the peace to the truth of said certificate ; also that it does not appear upon said list that the same was completed and lodged in the town clerk's office on or before the 15th day of May, 1863 ; also that the abstract of the list is signed by one of the listers only ; also that it does not appear on said list that the lands in said town were duly appraised by the listers in 1860. The defendant who was one of the listers in 1863, then testified that himself and the other lister whose name is signed to the certificate appended to the list, were duly sworn to the truth of said certificate by a justice of the peace. This evidence was objected to by the plaintiff.

The court overruled all the objections to said list, and held that it was a legal grand list on its face, and in making the ruling they did it without reference to the testimony of the defendant, that it was sworn to in fact. The plaintiff excepted to this ruling of the court. The plaintiff then offered to prove that there was no record in the town clerk's office, showing that the lands in Lemington were appraised by the listers in 1860, as required by law. This one objection was excluded to which the plaintiff excepted. The plaintiff then offered to prove that the listers in 1860 did not make any appraisal of the lands in Lemington as the statute provides. This was also excluded,—to which the plaintiff excepted. Upon the foregoing state of the case the court directed the jury to return a verdict for the defendant, which was done accordingly. The proceedings of the town are sufficiently stated in the opinion.

*Geo. N. Dale* and —— *Ladd*, for the plaintiff.

*Ossian Ray* and *Ira A. Ramsey*, for the defendant.

The opinion of the court was delivered by

PECK, J.    The defendant justifies the taking of the horse in question, as collector under a rate bill and warrant for the collection of a town tax. The questions presented are in relation to the legality of the vote raising the tax, and the validity of the list upon which it was assessed.

The defendant introduced a record of the proceedings of the town at its annual March meeting in 1863, from which it appears that one of the subjects of the meeting, specified in the warning, was, "to see if the town will raise money to pay the bounty promised to soldiers." Under that article the town "voted to raise fifty-five cents on the dollar of the grand list to pay the bounty offered to soldiers." In the county court the plaintiff claimed that the vote, upon its face, showed that the money was raised for a purpose not authorized by law ; and the court decided that the vote was apparently for a legal purpose of taxation, to this the plaintiff excepted. The act of 1862 on this subject provides, among other things, that towns may grant and vote such sums of money as they may judge best, to be paid to those persons who have volunteered, or may hereafter volunteer, from said town, to serve in the volunteer or militia regiments, or companies, of this state in the service of the United States ; or for the purpose of paying any debts contracted by the selectmen, to pay any bounty to such volunteers, agreeably to any previous vote of the town, or for the purpose of defraying the expense and amount of bounties to such volunteers, which bounties may have been paid to such volunteers by private subscription, or from private means. This act clearly gives the right to towns to raise money to pay bounty to soldiers. It is insisted that this vote is too general and indefinite. But all that is necessary in this respect is that a vote of a town raising money should indicate in general terms, the purpose or object for which the money is raised, and if that purpose or object is such as comes within the scope of the powers of the town, it is sufficient. It is not necessary to the validity of the vote that it should state the particular facts which show the present necessity of the town for the use of the money. The object specified being within the powers of the town, it is to be intended that the town has

Blodgett *v.* Holbrook.

judged properly as to the occasion and necessity for the exercise of the power in the particular instance. The objection that the vote is too general can not prevail. Nor is the objection that the money was raised, in the language of the vote, to pay the bounties *offered* to soldiers, of any force. It is immaterial to the validity of the vote whether the bounty *had been* offered, or was *thereafter to be* offered to volunteers.

It is sufficient that it appears from the vote that the money was raised for an object for which the town had power by law to raise money. The town had power under the act of 1862 to raise money to pay volunteers, and the vote sufficiently expresses that to be the object. The objection taken at the trial, "that the vote upon its face showed that the money was raised for a purpose not authorized by law," was properly overruled. It is now also objected that the vote does not follow the warning, in this, that the warning is to see if the town will raise money to pay the bounty *promised* to soldiers; and in the vote the word *offered* is substituted for *promised*. This difference in phraseology is too slight to affect the validity of the vote; nor can this objection properly be raised here, as it does not come within the scope of the objection taken at the jury trial.

The next question is, whether the county court erred in rejecting the evidence offered by the plaintiff to show that the money was raised for a purpose not legitimately within the power of the town, that is, to pay certain notes the selectmen had given to certain soldiers as bounty, to induce them to enlist to the credit of the town.

It is very questionable, where the vote of a town raising money shows that it was regularly raised for a legal purpose, whether it is competent to avoid the vote by showing by parol, that it was intended to be used, when collected, for a purpose not legal, and thereby make the constable a trespasser in collecting it. If a tax is legally voted for a legal object, it would seem that it might lawfully be collected, and that the records of the town under which it was imposed should determine its legality, and if the officers of the town misappropriate the money, it should be a matter to be settled between them and the town. But however this may be, the county court seem to have rejected the evidence upon the ground that the facts

offered to be proved had no tendency to show that the purpose for which the money was raised was illegal; and in this view we think there was no error. The act of 1862, General Statutes, p. 118, § 1, empowers towns, among other purposes, to raise money, "for the purpose of defraying the expense and amount of bounties to such volunteers, which bounties may have been paid to such volunteers by private subscription or from private means."

The fact that the selectmen had not actually paid the notes that they gave to the volunteers that they had enlisted, does not exclude the case from the scope and object of the statute. A promissory note for many purposes is regarded as a payment; but whether so or not, the selectmen had incurred a personal liability by giving their notes; and raising money to cancel that liability was within the spirit and scope of the power given by the statute. Besides, if the money was raised to pay those notes, held by such volunteers, then it was raised to pay *to the volunteers*, and came within the letter of the statute. It is urged that as the statute authorizes the raising of money to be paid to those who have volunteered or may hereafter volunteer, "from said town," the purpose was not within the statute, because some of the volunteers did not reside in that town; and therefore did not volunteer *from* that town. But if they enlisted to the credit of the town upon its quota, they enlisted from that town within the meaning of the statute. It was not necessary they should reside in that town in order to be credited upon the quota of that town.

The remaining question is as to the validity of the list on which the tax was assessed. The objections are to the validity of the whole list of the town for the year in question.

It is objected that the form of the oath certified and signed by the listers, is the form required by the statute in the year of the general appraisal of real estate, instead of that given for other years. G. S., p. 522, §§ 35, 36. We have not been furnished with a copy of the certificate signed by the listers and appended to the list, but it seems to be conceded that the fact is as assumed by the plaintiff's counsel in this objection. The certificate given in the statute, for the year of general appraisal, contains a statement that the appraisal of the real estate

was made, " *at such sums as we would appraise the same in payment of a just debt due from a solvent debtor*," and which is omitted in the form given in the statute for the intermediate years. The insertion of this clause in this certificate can not vitiate it, as it is the duty of listers in the intermediate years, so far as they have occasion to appraise real estate, to follow the same rule of appraisal as that prescribed for the year of general appraisal. The only other difference between the two forms is, that the form for the years between the years of general appraisal, contains the words, "*and have appraised all additions, and made all deductions, required by law.*" This is omitted in the other form. This omission in the certificate in question, we are of opinion, is not sufficient to render the list void. The general statement that they have appraised all the real estate, necessarily includes the statement as to additions and deductions. The deductions referred to in the statute are where buildings have been destroyed by fire or other accident, since the last general appraisal. By the act of 1855 there was but one form of oath or certificate given, which was the same as is annexed to this list; but by the act of 1856, which act is still in force, the form for the years intervening the general appraisals was changed as already stated.

It is insisted the list is void for the reason that there is no certificate of a justice of the peace upon the list, that the oath certified and signed by the listers, was administered to them. It was decided in *Reed* v. *Chandler*, 32 Vt. 285, that a grand list, not certified or sworn to, was incomplete and invalid. In that case there was no certificate of the listers, except a certificate of the abstract of the list, such as is required to be returned to the legislature; and it appeared affirmatively by the testimony of one of the listers, that neither that certificate nor the list, was sworn to by the listers. To that decision we are disposed to adhere. In the case at bar, one of the listers testified that the listers did make oath before a justice of the peace to the certificate which they signed and attached to the list. There does not appear to have been any evidence to contradict this. If they in fact made oath to the truth of the certificate, that gave it all the sanction which the law requires, unless it is necessary to the validity of the list, that the fact that the oath was

administered should be evidenced by the certificate of the magistrate annexed to the certificate of the listers. The act of 1855 does not in terms so provide, and it is doubtful whether it does by legal construction. That act, so far as relates to this question, is the same as the provision in the General Statutes, except the provision in the act of 1856 already referred to, changing the form of the certificate for the years other than the years of the general appraisal. That act of 1856 was not intended to change the law except as to the form of such certificate. But whether the statute contemplates the annexing of the magistrate's certificate to that of the listers or not, we think the omission of it is not such a departure as to invalidate the list, when in fact the oath was administered. But it appears by the case that the county court ruled without reference to the testimony of the lister, that it was sworn to, that the list was good on the face of it. Thus the question arises whether, upon the face of the list with the certificate of the listers signed by them, it is to be presumed that the list was sworn to as stated in the certificate. The listers are public officers; it was their legal duty to swear to the truth of the certificate; and they state over their own signatures that they did so, as the certificate is in the form of an oath. Considering the presumption that exists in favor of the doings of public officers, the intendment is that the listers made oath to the certificate as they therein state.

It was further objected, "that it does not appear *upon said list* that the same was completed and lodged in the town clerk's office on or before the 18th day of May, 1863." The answer to this is that the statute does not require that this should *appear upon the list*.

It appears that, "the plaintiff offered to prove that there was no record in the town clerk's office showing that the lands in Lemington were appraised by the listers in 1860, as required by law." This hardly comes up to an offer to show that no such appraisal was made in 1860, or that there never was any proper evidence of such appraisal. But assuming such was the tendency of the evidence offered, it was properly rejected. If the listers in 1860, the year for the general appraisal, omitted to perform that duty, the town was not obliged to be without a grand list during the next succeeding five

years. In such case it would be the duty of the listers to make a list from their own appraisal. It is provided by General Statutes, page 520, § 24, "when the listers of any town shall at the regular appraisal of real estate, by accident, mistake, or otherwise, neglect to appraise any real estate, it shall be the duty of the listers of any such town for any succeeding year, to appraise the real estate so omitted, and set the same to the owner in the list of such town." Probably the leading object of this section was to give the listers of succeeding years power to supply defects in the regular appraisal arising from partial omissions, but it is broad enough to cover an entire omission to make an appraisal.

This disposes of all the objections insisted on, and the judgment of the county court is affirmed.