Frazier, J.
The action below was brought by the treasurer of Harrison county to collect of the railway company on account of taxes, the sum of $3,163.61, in which is included a penalty of ten per centum under section 2855, Revised Statutes, for the non-payment of the taxes due December 1894, and June, 1895.
The defendant, by answer, says the levies are illegal and excessive, and there is due $2,784.37, and no more.
The plaintiff, by reply, says the total valuation for taxa-'1 tion in Harrison county exceeds eleven millions and does not exceed fifteen million dollars; that the amount sued for, as due for taxes, is made up in part of state, county and local township taxes and in part of the penalty of ten per • centum for non-payment when due, and denies that the levies are excessive or illegal; that by reason of the defendant not *361 tendering or offering to pay the taxes it admits to be legally levied, it is liable for the payment of the penalty and interest on such part as was legally levied and unpaid from the time they became due and payable.
The case was tried upon an agreed statement of facts, which are embodied in a .bill of exceptions, and the court gave judgment for taxes, penalty and interest in the sum of $3,135.95, and it is claimed that in this the court of common pleas erred.
It is admitted by the agreed statement, that the levies for township purposes in some of the townships were in excess of the amount authorized by law, and the court gave judgment for the amount claimed, less the sum admitted to be illegally levied, and the railway company claims that from the agreed statement of facts and the law, the levy for general county purposes is also excessive.
The judgment of the court of common pleas reduced the amount of the township levies by the amount agreed to be illegal, but held that the levy for general county purposes was not excessive; and also held that there having been no tender of the amount admitted to be due, the treasurer was entitled to recover the penalty on such sum as is legally levied.
Two questions are urged by the plaintiff in error: First, that the levy for general county purposes is' in excess of the amount authorized by law, and this involves a construction of the proviso contained in the latter part of section 2823, of the Revised Statutes. The second is, whether, in the absence of a tender of so much of the taxes as is admitted by the tax payer to be due, the penalty can be collected in a suit brought by the treasurer for the taxes, based on the amount standing on the treasurer’s duplicate, a part of which is admitted to be illegal.
It appears, from the agreed statement of facts attached to the bill of exceptions, and which, it is agreed, shows the *362 levy of taxes in Harrison county in the year 1894, that the total levy by the county commissioners for all purposes was five mills and eight and one-half tenths of a mill, as follows: County levy, eighteen-tenths mills; infirmary fund, six-tenths of a mill; Children’s Home levy, two-tenths of a mill; bridge levy, six-tenths of a mill; for new roads, two tenths of a mill; building levy, two tenths of a mill; election levy, one-tenth of a mill;, court house levy, eleven and one-half-tenths mills; county road, ten-tenths of a mill; total, fifty-eight and one-half-tenths mills, or the amount stated above.
The last clause of section 2823 provides:
“Whenever in any county the levy in the first clause of. this section authorized, is deemed insufficient for general county purposes, the commissioners may increase said levy by any amount not exceeding six-tenths of a mill on the dollar valuation; but in such case the levies for other purposes shall be reduced to the same extent; so that the total levies for all purposes shall not exceed the limits in this chapter prescribed. ’’
The limits prescribed for the taxes which may be levied by the county commissioners by the chapter referred to, Title 13, Chap. 5, in a county of the class of Harrison, exclusive of such provision is, under section 2823, for county purposes,one mill and five-tenths, for building county buildings and purchasing sites therefor, and lands for infirmary purposes, one mill and five-tenths.
Under section 2824, as amended in 91st Ohio Laws, 196, for road and bridge purposes,one mill and five-tenths; under section 2826 for the support of the poor, six-tenths of a mill, making a total levy authorized by the chapter of five and one-tenth mills, so that the levy actually made of five mills and eight and one-half tenths of a mill is in excess of the rate mentioned in this chapter, by seven and one-half-tenths of a mill.
The defendant in error claims that the limitation in the latter clause of section 2823 applies only to the levies *363 authorized by title 13, chap. 5, of the Revised Statutes, and does not apply to the levies for new roads, two-tenths of a mill, election levy one-tenth of a mill, and court house levy eleven and one-half-tenths mills, which are levied under other statutes.
If the limitation is to apply only to levies provided for in chapter 5, title 13, and not to levies authorized by other general and special statutes, then the county commissioners have not exceeded the rates they were authorized to levy.
There is a levy under a special statute, 90 Ohio Local Laws, 279, of eleven and one-half tenths mills for the erection of a new court house. That statute provides, in section 2:
“That the county commissioners of said county, for the purpose of constructing said court house, are hereby authorized to borrow such sums of money as may be necessary at a rate of not exceeding six per cent per annum and issue the bonds of the said county to secure the payment of principal and interest thereon, and such interest shall be payable semi-annually at the office of the county treasurer; said bonds shall be issued and sold in all respects in pursuance of existing laws at not less than their face value, and the principal shall be paid at said county treasurer’s office at such times as the commissioners shall prescribe not exceeding nine years after date, and said bonds shall specify the object for which they were issued. The commissioners shall, annually, at their June session, levy such amount of. taxes as will fully meet the interest on such indebtedness and at least one-ninth of the principal.”
It was under this statute that the commissioners made the levy of eleven and one-half-tenths mills, and if it is the true construction of the law, that the amount authorized to be levied by this statute is in addition to that which is authorized by the general laws prescribing the rate of taxation, and in no manner reduces the amount which the commissioners may levy for every purpose prescribed by the general statutes, then the levy is not in excess of the rate which the *364 commissioners might levy for general county purposes, and we think this is the true construction of this statute, and it renders it unnecessary for us to examine the levies which are made under those statutes for new ■ roads and election purposes, for they would, probably, as is claimed by counsel for the defendant in error in this case, be governed by the same rule; but whether so or not,if the construction we give to this special statute is the correct one, then the levies are not excessive.
The first clause of that section, 2823, prescribes the rate of taxation,and permits, in a county having the taxable value of property of Harrison, a levy for general county purposes of one mill and five-tenths, and the latter clause of the section permits a levy of six-tenths of a mill, or together two and one-tenth mills, or twenty-one-tenths mills, and the levies for county purposes made by the commissioners is eighteen-tenths, or one mill and eight-tenths mills.
It is urged that there is no statement or finding that the levy in the first clause of the section authorized is deemed insufficient for general county purposes. On the other hand it is claimed by counsel for the defendant in error, that it is to be presumed in favor of the record of the county commissioners that they made a leagl levy, and that the construction to be given to the commissioners’ record should be a liberal one, such as is given to the records, of courts of subordinate and inferior jurisdiction.
In the case of Lima v. McBride, 34 Ohio St., 338, an action to compel, by mandamus, McBride, as auditor, to place upon the duplicate a levy made by the county commissioners, the syllabus is:
“1. If two statutes provide for the levy of a road tax, and the record of the board of county commissioners, levying such tax, is susceptible of a construction which bases the levy equally well on either statute, but as appliedjto one the levy is excessive; and, applied to the other, is not excessive, *365 such levy will, prima facie, be regarded as based on the latter act, although the tax therein mentioned can only be levied to provide for a particular condition of the roads, while the other act is general, and the levy actually made is in general terms.
“2. Where the county commissioners, intending to make a levy of taxes for road purposes, under the act of April 30, 1869, (66 Ohio Laws, 60), cause such levy to be entered on the record, in general terms, the tax will not be regarded as invalid, or made under the act of 1877, (74 Ohio Laws, 92), on the mere ground that the record does not show the existence of the facts which warranted the levy under the former act.
Okey, J., in the opinion, says:
“Beside the claim, which we hold to be untenable, that even if the taxes were levied under the act of April 30, 1869, they must, under the act of 1877, and section 487 of the municipal code, be expended in the municipal corporation,the city further claims that the act of 1877 is general; that the levy, in the general form set forth in the record, is a substantial compliance with that act; that the time specified for making the levy, that is, at a special session, in May, 1877, was directory; that if the amount levied and collected was in excess of that authorized by the act, the county auditor could not interpose the objection in this case; that the act of April 30, 1869, has relation to a special condition of things, of the existence of which nothing appears in the record; and, therefore, that it necessarily follows the levy was made under the act of 1877.
“Admitting the premises, does the conclusion follow that this was a levy under the act of 1877, and not under the act of April 30, 1869? Possibly it is true that naming the time for making the levy was not a limitation on the authority of the commissioners, and it may also be true that the auditor could not avail himself of the defense that the amount levied is in excess of that authorized by law (31 Ohio St., 432); but in the construction of these acts, in determining whether the levy was made at the time and for the amount expressly authorized by the act of 1869, while it was not made at the time directed in the act of 1877, and was.in excess of the levy authorized thereby, is of great im *366 portance. ‘ When an instrument is susceptible of two conflict-■mg probable constructions, the court will adopt the construction which is most consistent with good faith, and will hold that such construction was intended by the parties; and this rule of construction applies to cases where an act or fact is ' fairly susceptible of two interpretations, one lawful and the other unlawful.’ 2 Wharton Ev., section 1249.
“The commissioners of a county constitute a board, and the county auditor is their secretary, who is required to keep ‘an accurate record of all their corporate proceedings.’ 67 Ohio Laws, 104. The proceedings of the board are, in many respects, those of a court of special and inferior jurisdiction.
“In Anderson v. Commissioners, etc., 12 Ohio St., 635-643, it is said: ‘The limited record they direct to be made is to be considered evidence of the establishment of the road, although unaccompanied by proof of the essential requisites to the exercise of the jurisdiction conferred.’ The same principle is recognized in Beebe v. Scheidt, 13 Ohio St., 406; Corry v. Gaynor, 22 Ohio St., 584; McClellan v. Miller, 28 Ohio St., 488; Frevert v. Finfrock, 31 Ohio St., 621.
“In this case it appears the commissioners were clothed with authority to levy taxes for road and bridge purposes. They met as a board at the time directed in the act of April 30, 1869, took the subject of a levy for road purposes under that act into consideration, and made a levy for the purpose, general in terms,in excess of that authorized by the act of 1877, but within the act of 1869, which was the statute upon which they intended to base their action. Consequently, it appears the matter was within the jurisdiction of the board. The authorities above mentioned, though referring to judicial action, are applicable; and, moreover, they are in accordance with the general rule. ‘Judicial officers, though of special and limited jurisdiction, will be presumed to have acted regularly as to all matters within their jurisdiction, unless the record shows to the contrary.’ 2 Wharton Ev., section 1308; 2 Best’s Ev., section 360.
“While levying of taxes is a legislative power, (Cooley on Taxation, 33), the record of the officers making the levy will’ receive at least as favorable consideration as the records of an inferior judicial tribunal. In the well considered case of West School District v. Merrills, 12 Conn., 437, it was *367 said: ‘There is no rule of law which requires any formal technical statement of the objects for which the money is to be raised. All that can be required as to such statement, to render the vote prima facie legal, is that it should appear from the vote, with reasonable certainty, that the tax is laid for a purpose authorized by law. ’ The same view is strongly enforced in Adams v. Hyde, 27 Vt., 231; Blodget v. Holbrook, 39 Vt., 336; West v. Whitaker, 37 Iowa, 598.”
We are, therefore, of opinion that the county commissioners in this case were not required to say that in their judgment the amount prescribed in the first paragraph of the section was insufficient for general county purposes; but they, having kept within the limits of the law which they might levy, under the circumstances prescribed in the section, the levy is not excessive.
We do not deem it necessary to follow out further the questions raised as to the legality of the levy for general county purposes. Under any view of the case the commissioners acted within the authority given them by section 2823 of the Revised Statutes, and that the provisions or limitations in that section do not in any manner interfere with the duty and the right of the county commissioners to make the levy directed by local and other general statutes, and that in making the levy they were not without authority, and their action is legal.
As to the second question, is the defendant liable for a penalty of ten per centum on the amount of taxes that was legally assessed?
It is admitted that the township levies, or some of them, which were included in the demand made, were excessive, and the levy therefore illegal. We are unable to find any adjudicated Ohio case in point.
We have been referred in argument to 3 Ohio Nisi Prius, 274, an opinon of Judge Nye, in the common pleas court of Lorain county, Ward, Treasurer, v. The Wheeling and Lake Erie Railway. In the syllabus, it is said:
*368 “In a township where the taxes are excessive in some particulars, and for that reason the railroad company refused to pay or tender any part of its taxes, whether the penalty should be added- — -query?”
Judge Nye, in the opinion, says:
“While I am in serious doubt as to the law with reference to requiring the defendant to pay the penalty upon townships where the taxes are excessive, I have decided to follow the rule laid down for equity cases, and require the defendant in this case to pay the penalty for the same reason that it made no tender of the amount that it admitted to be due.”
We have also been referred or cited to a number of cases in Ohio, but none of them, in our judgment, involve the questions raised in this case.
We are cited to the case of Groesbeck v. Cincinnati et al., 51 Ohio St., 365. In reading the opinions or decisions of the court we must bear in mind, in considering the language used, the question that is under consideration, and we must apply the language used to the case that is then at bar and which the court is determining.
The syllabus of the case is:
“An ordinance of a city, assessing on the property abutting on a street more than is required to pay the cost of the improvement of the street is, as to the excess of the assessment over the cost of the improvement, illegal; and, having been paid by the property owner, an action to recover back such excess under section 5848, Revised Statutes, must be commenced within one year after such payment. The fact that the passage of the ordinance was induced by a mistake in the calculation of the cost of the improvement, and that payment was made in ignorance of such mistake, will not have the effect to save the action from the limitation provided for in said section.”
We think the authorities referred to in support of the judgment of the court below, that the defendant below should have tendered the amount which it admitted to be *369 due, do not at all decide the question,or assist us in deciding it.
The plaintiff in error claims that if the amount admitted to be due had been tendered, the treasurer could not have received it, and in support of that proposition he cites Revised Statuts, sections 1091, 1092 and 1093. Section 1091 reads:
“Each person charged with taxes on a tax duplicate in the hands of a county treasurer, may pay the full amount of such taxes on or before the twentieth day of December, or one-half thereof on or before the twentieth day of June next ensuing; but all road taxes so charged, shall be paid prior to the twentieth day of December.”
“Section 1092: When taxes, charged against the property of any person, are paid by installments, as aforesaid, each of such payments, exclusive of road taxes, shall be apportioned among the several funds for which taxes have been assessed, in their proper proportions.”
“Section 1093: When a person desires to pay only a proportion of any tax charged on real estate, otherwise than in installments, as aforesaid, such person shall pay a like proportion of all the taxes charged thereon for state, county, township or ether purpose, exclusive of road taxes; and no person shall be permitted to pay one or more of said taxes without paying the others in like proportion, except only when the collection of some particular tax is legally enjoined.”
The query is, what does section 1093 apply to?
Can a party, under that section of the statute, for instance, pay the county taxes, and refuse to pay the township taxes? Can he select one, under the provisions of that section, and' say I desire to pay such proportion which I admit to be legal, and refuse to pay the other?
We think that section applies only where a tax payer desires to pay a proportion of the taxes assessed and levied for all purposes, as where he is a part owner, and not where he admits that part is legal,- and desires to pay- the legal taxes assessed and desires not to pay the portion which he claims *370 to be illegal; and that the only provision of the statute under which a person may select one levy — as, for instance, a levy made by the county commissioners, and refuse to pay a levy made by the township trustees, or vice versa, and claim that one is legal and the other illegal — is under the provisions of section 5851 of the Revised Statutes, which provides:
“If the plaintiff, in an action to enjoin the collection of taxes or assessments, admit a part thereof to have been legally levied, he must first pay or tender the sum admitted to be due; if an order of injunction be allowed, an undertaking must be given as in other cases; and the injunction shall be a justification of the officer charged with the collection of such taxes or assessments for not collecting the same.”
It is true, as is said in argument, that before the tax payer can enjoin, he must tender that which he admits to be legal and due.
That may be founded upon either of two principles:
One of the principles was stated by counsel for defendant in error in argument, that before a man can appeal to equity he must do equity; that he must tender the amount due.
But probably it rests upon another and more substantial basis and one of more certainty, that a person is not permitted, because he questions a small amount of the assessment, admitting the greater portion to be due, to litigate the question and hold in his hands unpaid that which h admits to be due, and when he appeals to a court, before the court will give him a remedy in cases of this kind, he must pay the amount which he admits to be due.
But there is another provision of the statute which, as we think, applies to cases of this character.
The law does not intend that a man shall pay money which is not due from him, and take the risk of collecting it back, with the officer answering that the payment was voluntary, unless it is necessary to do so in order to protect his property. Where the officer is proceeding in a summary *371 maimer to collect the taxes, then he may either pay it under protest and recover it back, or he may himself appeal to the courts; but where the officer is not threatening to proceed summarily, and is appealing to the law, as he may, and frequently does, for his own protection, the law makes ample provision for the payment of the amount admitted to be due.
Section 5320, Revised Statutes, provides:
“When all or part of one or more of the causes of action are not put in issue by answer, judgment may be taken, as upon default, for so much of the plaintiff’s demand as is not put in issue by the answer, upon any or all of the causes of action, without prejudice to the rights of the plaintiff, as to that portion of his demand disputed; and if, in the determination of any cause, the t-aking an account, proof of a fact, or the assessment of damages is necessary, the court will take the account, hear the proof, or assess the damages, or may refer the case to a referee or master for such purpose, or direct the matter to be ascertained by a jury, as the case may require. ’ ’
The officer, probably for his own protection, instead of taking the summary mode of collecting by distress, appeals to the courts in this case, and when the defendant answers he has the right to take judgment as upon default for the part admitted to be due, and litigate the portion claimed to be excessive or illegal.
It is said, again, that no tender was necessary, from the fact that the county treasurer could not have received the amount which was admitted to be due if there had been an offer or tender of the taxes admitted to be due, unless the party had paid upon that which was illegal and unlawful an equal amount with that which is lawful, and that the law will not require a vain thing; it will not require a tender where the party cannot or will not receive the tender, if made. We are referred to the case of Manhattan Life Insurance Company v. Smith, 44 Ohio St., 156. The fourth paragraph of the syllabus is:
*372 “Where, in such case, the company repudiates the contract, and by its course of conduct clearly indicates that a tender^of the premium after death of the insured, if made, would not be accepted, a failure to make such tender will not bar a recovery on the policy.”
And in the opinion, Spear, J., says:
“'“‘The action of the company in the case at bar was, in effect, a repudiation of-its promise to pay the amount stipulated in the policy. Even had Mrs. Smith learned the amount and time of payment after the death of her husband,. a tender would have been a useless ceremony. ‘On general principles, whenever the act of one party, to whom another is bound to tender money, services or goods, indicates clearly that the tender, .if made, would not be accepted, the other party is excused from technical performance of his agreement. The law never requires a vain thing to be done. Isham v. Greenham, 1 Handy, 361; See, also, Brock v. Hidy, 13 Ohio St., 306.”
In Tracy v. Irwin, 85 U. S., 549, part of the syllabus is:
“If the tax commissioners have, by an established general rule announced, and a uniform practice under it, refused to receive the taxes due unless tendered by the owner in person, even a formal offer by another to pay is unnecessary. It is enough if a relative of the owner went to the office of the commissioner to see after the payment of the tax on.the property, but made no formal offer to pay, because it was in effect waived by the commissioners, they declining to receive any tender unless made by the owner in person.”
In State v. Certain Lands, etc., 42 North Western Reporter, 473, the Supreme Court of Minnesota hold:
“That the penalties for the non-payment of taxes can only be imposed after the tax payer has had an opportunity to pay and fails to do so, Hence, where a part of the tax is illegal, the party had had no opportunity of paying the legal part alone, and he interposes and maintains a defense to the illegal part of the 10 and 5 per cent, penalties previously interposed under section 69 of the general tax law, were wholly unauthorized and invalid, (the party not having been then in *373 default), and no part of them should be included in the judgment. ”
Swayne, Swayne & Hayes, and D. A. Hollingsiuorth, for Plaintiff.
W. T. Perry, for Defendant.
Mitchell, J., in the opinion says:
“A penalty for the non-payment of a tax cannot be imposed until the person has an opportunity to pay it and fails to do so. * * * As the whole tax extended against a tract of land is an entirety, the owner can not pay a part of it without paying the whole, and if apart is illegal and he pay the whole, ordinarily it would be a voluntary payment, and he could not recover back the illegal part. Hence, in such case, his only remedy is to wait until proceedings are commenced to enforce the judgment against his land, and then defend against the illegal part of the tax; and until it is deducted by the judgment of the court, he has had no opportunity to pay the valid part of the tax, and consequently has been guilty of no default.”
We are of the opinion that the treasurer was not authorized to receive the taxes which were admitted tobe legal without receiving also an equal amount upon the township taxes that were admitted to be illegal and excessive, and that the defendant having at the earliest opportunity by answer admitted the amount which he claimed was due, the county treasurer might-have, as upon default, taken judgment for that amount without prejudice to his rights to the portion of his demand disputed, and that he had no right to make a demand for that which was illegal and excessive, and by so doing he could not legally place the company in default for the payment of that which is legal, and that the judgment, so far as the penalty is included in it, is erroneous.
So far as the penalty enters into the judgment, so far the judgment is reversed, and affirmed as to all other matters; and, under the statute, the case being affirmed in part and reversed in part, the costs will be divided equally between the parties.